**HEMPHILL COMPANY**

v.

**HOLEPROOF HOSIERY COMPANY.**

Civ. A. No. 4925.

United States District Court
N. D. Georgia, Atlanta Division.

March 13, 1956.

Supplemental Opinion April 6, 1956.

Spalding, Sibley, Troutman, Meadow & Smith, Atlanta, Ga., Kenyon & Kenyon, New York City, for plaintiff.

Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

SLOAN, District Judge.

This complaint was filed by Hemphill Company, as plaintiff, against the defendant, Holeproof Hosiery Company. The plaintiff is the owner of the Lawson & Green Patent No. 2,217,022 for "Solid Color Pattern Knitting Machine" and alleges that the defendant, Holeproof Hosiery Company has infringed method claims 2 and 3 and apparatus claims 48, 50 and 52 of said patent.

While admitting plaintiff's ownership of the patent, the defendant asserts that the claims in suit are void and that the Coile machine used by defendant does not infringe claims 2, 3, 48, 50 and 52 of the Lawson & Green Patent.

The action having been tried to the Court, without a jury, and the parties having been duly heard, the Court herewith makes the following:

Findings of Fact

1.  Plaintiff is a corporation organized under the laws of Massachusetts and is the owner of Patent No. 2,217,022 for "Solid Color Pattern Knitting Machine" issued on October 8, 1940, on the application of Lawson & Green.

2.  The defendant is a Wisconsin corporation and is a manufacturer of hosiery. It has had, and now has, a regular and established place of business in the Northern District of Georgia, Atlanta Division, at Marietta, Georgia which it has used beginning in 1944 and is now using certain knitting machines known as Coile machines, hereinafter designated as such.

3.  The Coile machines used by the defendant were purchased from the manufacturer thereof and used by the defendant for knitting hosiery. For many years prior to the issuance of the patent in suit, no automatic mechanism for knitting Argyle socks was known. Argyle socks, characterized by patterns on the leg, usually diamond forms of contrasting solid colors, were in popular demand which was supplied by knitting the socks by hand or hand machines.

4.  Lawson & Green undertook to develop a method of knitting and a machine which would produce solid color patterns in an automatic manner. By this invention, they did provide an automatic machine capable of knitting first the top of the stocking with continuous rotary knitting, then automatically shifting to reciprocating knitting and during the reciprocating knitting different yarns were fed from different stations to selected groups of needles. These groups differing in number in each course of knitting so that the pattern portion of the leg was knit, course by course, with the different yarns necessary to form the

diamond pattern design, completing each course before beginning the next and when the pattern leg portion has been completed the invention then automatically shifts to knit the heel and toe portions. By the patented method and machine, the entire sock is knit automatically.

5. In the patented machine there is a needle cylinder with needles arrayed around it which are normally in an inoperative position during the reciprocatory knitting stage and are acted on by selector mechanisms under control of pattern drums so that different groups of needles are selected and lifted into operative position on approaching each yarn feeding station, thereby different groups of needles are caused to knit the selected yarns in each course and the terminal needles of each group interknit the yarns knitted by the respective groups to complete each course of stitches around the sock at a single stroke of the machine.

6. The first six machines manufactured by plaintiff under the patent were purchased by the Interwoven Company shortly before the war to make Argyle socks. These machines were used continuously until 1955. Since the war, plaintiff has sold 2,258 of the patented machines for approximately $7,000,000.

7. The plaintiff's commercial machines are substantially identical with that shown and described in the patent in suit, except that the quadrant controlling the reciprocation during knitting of the patterned area has been lengthened enough to avoid making a back seam as shown in the patent. This change is not a departure from the patent but a mere substitution of mechanical equivalents, a matter of choice depending on whether the user desires to make seamed Argyles like those previously produced from flat blanks (Lamb machine type) or those having no seam (Harley-Kay type).

8. Beginning in 1954, the defendant corporation purchased and operated a number of the accused Coile machines. The defendant has used said machines for knitting hosiery. The Coile machines make Argyle socks automatically.

9. The Coile machine is more complicated than the machine in patent and contains added attachments. In regard to the features defined in the claims in suit, the Coile machine corresponds closely to the patented machine, having mechanisms of substantially the same character combined and cooperating in substantially the same way and achieving the same result.

10. The Coile machine has four yarn feeding stations; the patented machine has two, with yarn feed fingers at each to shift the yarn so each station does double duty. This is a mere substitution of an obvious equivalent without any change in function. The claims in suit are not specific to any such details of yarn feeding.

11. The Coile machine has its selector mechanisms and pattern drums arrayed on decks below the knitting deck; the patented machine has its selector mechanisms and pattern drums on the knitting deck. The claims are not concerned with the location of these mechanisms, but with their operation in selecting the different groups of needles at the appropriate time to knit the selected yarns. Defendant's mechanisms serve this function by selecting and lifting the jacks corresponding to the selected needles exactly as in the patent in suit.

12. In knitting the pattern portion of Argyle socks, the Coile machine automatically performs all of the steps defined in the method claims in suit in substantially the manner described in the patent and with the same result.

13. The Coile machine embodies all of the means defined in the apparatus claims in suit combined in substantially the manner described in the patent and cooperating to achieve the same result. The parts of the Coile machine which perform the functions specified in the apparatus claims are the full equivalents of the corresponding parts of the machine described in the patent.

14. Defendant's attack on the validity of the claims over the prior art is on the basis of ten prior United States pat-

ents and extracts from two early publications. The subject matter of these references falls into four groups:

(a) Flat bed and "V" bed knitting machines: The Textbook of Miller, pp. 219 and 220, the American Mechanical Dictionary, p. 1235, and the patents to Schwartz 1,228,483, Werfelman 1,877,262 and Steinhardt 1,990,440.

(b) Circular knitting machines for making split foot stockings: The patents to Shaw 460,039, Lawson 1,467,549 and 1,458,833, and Jones 1,796,202.

(c) Circular knitting machines for making vertical stripes: The patents to Robinson 1,947,617 and Blackburn 1,084,194.

(d) Circular knitting machines for making plain stockings: The patent to Hemphill 933,433.

15. The flat bed and "V" bed knitting machines disclosed by the references of Group (a) are remote from the subject matter of the claims in suit. They are not circular knitting machines. There is no needle selection. The patterning is effected solely by manipulation of the yarns. There is no selective grouping or regrouping of the needles from course to course to form a desired pattern.

16. Of the patents in Group (b), Lawson '549 and Shaw were cited by the Patent Office and as to these the presumption of validity stands firm. The remaining patents are merely cumulative. None of the patents in this group discloses the use of more than two yarns per course nor the concept of needle selection and the grouping and regrouping of needles for patterning. The switch cams shown in Shaw are not the equivalent of the needle selectors of Lawson & Green because they are incapable of varying the number of needles in a group acting upon a given yarn from course to course. The picks shown in the early Lawson and Jones patents are not such equivalents because at no time can they exert control over any needles other than terminal needles. The patent in suit plainly distinguishes needle selectors from picks and cams, both as to structure and function, and it is clear that picks and cams do not constitute needle selection means within the context of the patent. The claims do not assert novelty in needle selection, per se, but in the combination of elements with three or more yarns to achieve the new result. No such combination is disclosed by the patents in this group.

17. Of the two patents in Group (c) Robinson was cited by the Patent Office and Blackburn adds nothing to Robinson. Both patents are remote from the subject matter of the claims in suit. They disclose no needle selectors. No variation in needle grouping is possible with their mechanisms. They are limited to making vertical stripes of unalterable width. They cannot be rotated to complete a tubular stocking.

18. The Hemphill patent in Group (d) describes an automatic machine for making a plain stocking with a single yarn. No patterning mechanism of any sort is suggested and the patent has little pertinence to the claimed subject matter. In making the heel pocket, the width of the fabric is varied by means of picks acting on terminal needles. This is not equivalent to the use of needle selectors in knitting three or more separately fed yarns in the combination of the patent in suit.

19. While separate elements of the claims in suit may be found in separate prior art references, there is nothing in the prior art to suggest their correlation and interaction in the method and apparatus claimed. The combination of these elements as defined in the claims in suit is new.

20. No prior patent or publication offered by the defendant discloses the method or apparatus of the claims in suit. The differences between the subject matter of those claims and the prior art are such that the subject matter of the claims would not have been obvious at the time of the Lawson & Green invention to one having ordinary skill in the art.

21. The Lawson & Green patent represents a meritorious advance in knitting technology. The claims in suit involve inventive ingenuity. The machine de-

scribed and illustrated in the patent has achieved notable commercial success.

### Conclusions of Law

1. The Court has jurisdiction of the subject matter and of the parties under 28 U.S.C. § 1338(a) and 1400(b).

2. The plaintiff is the owner of the patent in suit and of all claims for relief and recovery thereunder.

3. The claims in suit set forth the invention with the particularity and distinctness required by § 112 of the Patent Act of 1952, 35 U.S.C.A. § 112. The use of "means" clauses in the apparatus claims to recite the inventive combination is expressly authorized by the third paragraph of § 112.

4. Anticipation is not made out by culling from one and another of the prior patents elements of the combinations in suit, where the combinations themselves are not shown in the prior patents.

5. The claims in suit involve patentable invention over the prior art and are valid.

6. Infringement is not avoided by importing or reading into the claims in suit limitations not contained therein but drawn from claims not in suit.

7. The claims in suit are infringed by defendant's accused knitting machine and method of operation.

8. The plaintiff is entitled to relief by injunction, assessment of damages and costs and reasonable attorney's fees prayed for in the complaint.

### Supplemental Opinion

On March 13, 1956 the Court entered its findings of fact and conclusions of law in the above case. The defendant has filed a motion under Rule 52(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A., that the Court enter additional findings as follows:

"21. The accused machine is capable of operation with less than three yarns fed during each reciprocating stroke.

"22. In a pre-trial order dated August 23, 1955, plaintiff agreed that it would advise defendant within a reasonable time whether plaintiff relied upon said operation involving less than three yarns as infringing Claims 2, 3, 48, 50, 52 of Patent No. 2,217,022.

"23. After August 23, 1955 and prior to the commencement of the trial of this action, plaintiff stipulated that with respect to the specific machines demonstrated to plaintiff at defendant's plant and shown and described in Plaintiff's Exhibit No. 4, plaintiff gave notice that it did not rely upon an operation of said machines as infringing the above mentioned patent claims in suit or any of them."

Defendant also moves that Conclusion of Law No. 7 be amended to read as follows:

"7. The claims in suit are infringed by defendant's accused knitting machines and method of operation, if three or more yarns are fed during each reciprocating stroke, but are not infringed if less than three yarns are fed during each reciprocating stroke."

The findings and conclusion heretofore made require no such amendment or amplification since such findings apply only to the accused machine or modifications within the claims in suit capable of feeding or knitting three or more yarns or split foot portions.

Defendant moves that Conclusion of Law No. 6 be amended as follows:

"8. The plaintiff is entitled to relief by injunction against the accused Coile machine and its method of operation, only if three or more yarns are fed to said machine during each reciprocating stroke thereof; and plaintiff is also entitled to assessment of damages and costs, excluding attorney's fees."

An effect of this proposed conclusion is to eliminate the award of attorney's fees. Upon further considera-

tion the Court is of the opinion that plaintiff is not entitled to an award of attorney's fees in this case.

Defendant also moves under Rule 59 of the Federal Rules of Civil Procedure for a new trial, to the extent of offering British Patent No. 308,421 issued on March 28, 1929 to William Spiers, Ltd., in evidence. The British Patent is not shown to be, and is not, newly discovered evidence, and the motion for a new trial to the extent of offering same in evidence is without merit and should be overruled and denied.

It is ordered that Conclusion of Law No. 8 entered on March 13, 1956 be, and the same is, amended to read as follows:

8. The plaintiff is entitled to relief by injunction, assessment of damages and costs, excluding attorney's fees, as prayed for in the complaint.

With the exception of the above amendment to paragraph 8 of the conclusions of law, defendant's motion that the findings of fact and conclusions of law be amended and for a new trial to the extent of offering the British Patent in evidence is overruled and denied.